UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**NIGEL HURST,**
             **- Plaintiff**


         v.                      CIVIL NO. 3:08-CV-1422 (CFD)


**CONOPCO, INC. d/b/a/ UNILEVER
HOME AND PERSONAL CARE NORTH
AMERICA, et al.**
            **- Defendant**


<u>**RULING AND ORDER ON DEFENDANT'S MOTION TO COMPEL**</u>

The defendant, Conopco, Inc. ("Conopco"), has filed a motion to compel the plaintiff, Nigel Hurst ("Hurst"), to disclose certain financial records that pertain to certain allegations in Hurst's complaint. (Def.'s Mot. Compel 1.) Conopco has also moved for Hurst to pay reasonable attorney's fees, pursuant to Fed. R. Civ. P. 37(a)(5). As set forth below, Conopco's motion to compel is **GRANTED.**

**I.  Standard of Review**

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. <u>Id.</u> "Relevance" under Federal Rule of Civil Procedure 26(b)(1) has been construed broadly to include "any

matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). A party may object to a relevant discovery request, however, if it is "overly broad" or "unduly burdensome." See 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 33.173[3]-[4] (3d ed. 2004). To assert a proper objection on this basis, however, one must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). Instead, the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id.; see also Hickman v. Taylor, 329 U.S. 495, 507 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment").

**II.  Factual Background**

On April 6, 2005, Hurst and Conopco entered into an Agreement and General Release (the "Agreement") setting forth terms for the termination of Hurst's employment with Conopco. (Def.'s Mot. Compel 1.) The Agreement contained specific terms and conditions

regarding payment from Conopco to Hurst upon Hurst's relocation to another residence.  Id.  Hurst also received nearly $2 million under the Agreement.  Id.  Hurst alleges that the Agreement further obligated Conopco to pay for certain relocation costs, "including the real estate broker's commission up to a maximum of 7%, plus reasonable and customary closing costs, . . . ."  (Pl.'s Compl. ¶ 11.)  Conopco denies this allegation and refers the Court to the legal and technical language of the Agreement.  (Def.'s Answer ¶ 11; Def.'s Mot. Compel Ex. B.)  Resolution of this particular dispute is immaterial to the resolution of the instant motion.

Before Hurst entered into the Agreement with Conopco, he allegedly informed Conopco that termination of his employment would "decrease available income to cover family costs, including education," thereby forcing him and his family to relocate.  (Pl.'s Compl. ¶ 19.)  In response, Conopco allegedly promised to pay for all of Hurts's expenses stemming from the relocation, "including brokerage fees and closing costs . . . ."  Id.  Plaintiff claims to have relied upon these statements two years later in May, 2007, when he and his family decided to move from their home in Stamford, Connecticut.

In May, 2007, Hurst received a firm offer of $2.4 million for his home in Stamford.  Id. at ¶ 25.  The brokerage commission and closing costs from the proposed sale totaled approximately $200,000.  Id.  Hurst asserts that Conopco repudiated the terms of

the Agreement by refusing to pay that amount. Id. at ¶¶ 26, 28. As a result, Hurst's family allegedly could not absorb the $200,000 that Conopco refused to pay, thereby forcing Hurst to reject the $2.4 million offer. Id. at ¶ 28. Subsequently, the value of the home dropped substantially, causing Hurst and his family to suffer "economic losses and emotional distress." Id. Hurst now seeks to recover the decline in value of his Stamford home; to wit, $2.4 million less the ultimate selling price of the residence. Id. at ¶ 35.

On November 19, 2008, Conopco requested from Hurst "all documents concerning Plaintiff's financial condition, . . . , from January 1, 2006, to the present, including, but not limited to, banking accounts, financial accounts, brokerage accounts, securities, bonds, assets, liabilities, real property, debts, mortgages, personal property, financial statements, net worth statements, balance sheets, applications for financing, fees, royalties, accounts receivables, compensation, contract rights, intangibles, income tax returns and accompanying schedules, IRS W-2 forms, IRS 1099 forms and authorizations for income tax returns." (Def.'s Mot. Compel Ex. D. ¶ 9.)

Conopco claims that Hurst has not produced complete financial records from 2005, 2006, and 2007. Specifically, Conopco states that Hurst has only produced his complete 2005 income tax return, two pages of his 2006 income tax return, and "selected records of

4

assets and liabilities for the period from April to May 2007 . . . ." (Def.'s Mot. Compel 3.)  Accordingly, Hurst has not yet produced the following: (1) complete 2006 and 2007 income tax returns, with schedules; (2) complete financial records for 2005, 2006, and 2007; and (3) applications for financing during the period of January 2005 through the present, or authorizations for Conopco to obtain that information from the applicable lending institutions.  Id.  Conopco, in filing the instant motion, seeks to compel Hurst's production of these items.

Hurst argues that Conopco's production requests are neither relevant nor likely to lead to the discovery of admissible evidence.  (Pl.'s Obj. 1.)  Hurst further argues that Conopco's production requests are unreasonable, oppressive, and constitute an invasion of his privacy.  Id.  Moreover, Hurst argues that financial records from before 2007 have no bearing on the court's interpretation of the Agreement, the issue of whether Conopco breached the Agreement in May, 2007, and the extent of the damages he may have suffered due to Conopco's alleged breach of the Agreement.  Id. at 4-5.  Finally, Hurst argues that he has already produced "substantial financial information concerning the time period when the sale of the house fell through . . . ." Id. at 5.  These items, Hurst argues, illustrate his financial condition at the moment the sale of the house fell through.  Id.

**III. Analysis**

The thrust of Hurst's complaint is that he was forced to reject the $2.4 million firm offer for his Stamford residence due to Conopco's alleged refusal to abide by the Agreement and pay approximately $200,000 for brokerage fees and closing costs. Hurst claims that he was forced to reject the offer because he and his family could not absorb the $200,000 sum on their own. The crucial issue, therefore, is whether Hurst was financially capable of proceeding with the sale in May, 2007 without Conopco paying for $200,000 worth of fees and costs. Thus, it is important to determine whether the plaintiff would have been financially able to complete the sale had $200,000 been deducted from the $2.4 million purchase price, thereby netting the plaintiff only $2.2 million.

Conopco argues that only a full examination of the plaintiff's complete financial records will enable it to test Hurst's claim that his family could not afford to absorb the $200,000 in fees and costs that Conopco refused to cover. (Def.'s Mot. Compel 4.) The Court agrees. Hurst asserts that his termination from Conopco decreased the available income to cover his family's costs. (Pl.'s Compl. ¶ 19.) These family costs would logically include the $200,000 in brokerage fees and closing costs that Hurst and his family eventually faced. Given the $2 million that Hurst received under the Agreement in 2005 -- before the $2.4 million offer was made in May, 2007 -- Conopco is entitled to examine all of Hurst's

financial records between the two time periods to determine how much available income Hurst's family had in the months and years leading up to May, 2007. This, in turn, will likely help Conopco learn whether Hurst truly could have absorbed the $200,000 loss.

In addition, the financial records that Conopco seeks are relevant to at least three of Conopco's affirmative defenses: (1) that Hurst failed to mitigate his damages; (2) that Hurst is estopped from asserting his claims; and (3) that Hurst's claims are barred due to his contributory negligence. (Def.'s Answer 8.) To prove one of these affirmative defenses, for example, Conopco seeks to prove that Hurst could have mitigated the damages he suffered by showing that Hurst could have proceeded with the May, 2007 sale by simply deducting the $200,000 in brokerage fees and closing costs from the $2.4 million purchase price. Moreover, Conopco will argue that Hurst should not have refused the $2.4 million firm offer, thereby assuming the risk that a decline in the home's value could cause economic harm to Hurst and his family. Hurst's financial condition in the months and years leading up to the May, 2007 offer is therefore relevant to the issue of whether Hurst would have been able to close the $2.4 million deal even if the $200,000 in fees and costs would have been deducted from the sale proceeds.

Hurst argues that Conopco need not examine financial records from before the $2.4 million offer was made in May, 2007. However, it is reasonable for Conopco to consider Hurst's financial

condition in the months and years leading up to this offer.  For instance, it is unclear what Hurst did with the $2 million he received in 2005 from Conopco under the Agreement.  Accordingly, Conopco is entitled to test Hurst's assertion that the termination of his employment actually *decreased* the income available to cover family expenses.  In order to do so, Conopco must examine Hurst's financial records from 2005 through 2007.

The Court also finds that Hurst has failed to meet his burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is . . . overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984).  Moreover, the Court is not persuaded by Hurst's argument that Conopco seeks to invade his privacy.  Hurst has already produced his complete 2005 income tax return and selected records of assets and liabilities from the period of 2005 through 2007.  (Def.'s Mot. Compel 3.)  Providing additional income tax returns and financial records would invade Hurst's privacy no more than Hurst himself has already permitted.

Finally, it must be reiterated that the definition of "relevance" has been construed broadly to allow the discovery of "any matter that bears on, or that reasonably could lead to other

matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). In this case, Conopco has put its affirmative defense that Hurst should have mitigated his damages squarely at issue. To demonstrate that Hurst should have mitigated his damages, Conopco seeks to establish that Hurst could have absorbed the $200,000 that Conopco allegedly failed to provide. Hurst's financial records for the two years prior to the $2.4 million offer are not only relevant, but they may be invaluable as well. Indeed, if Conopco were to review only Hurst's 2007 records, it would be reviewing data from nearly six months after the May, 2007 offer was made. Meanwhile, potentially significant data from six months before the May, 2007 offer -- such as financial records from November, 2006 -- would remain obscured.

**V.   Conclusion**

Accordingly, Conopco's motion to compel is **GRANTED**. Hurst is ordered to produce the following records to Conopco: (1) complete 2006 and 2007 income tax returns, with schedules; (2) complete financial records for 2005, 2006, and 2007; and (3) any and all applications for financing during the period from January, 2005 through the present, or authorizations to obtain such documentation from the applicable lending institutions. Plaintiff has also moved for an award of reasonable fees incurred in bringing this motion. The award of any fees in connection with this motion will be

considered, on application, at the conclusion of all proceedings in this case.

This is not a recommended ruling. This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. 636 (b) (1) (A); Fed. R. Civ. P. 6 (a), (e) and 72 (a); and Rule 2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court. <u>See</u> 28 U.S.C. § 636 (b) (written objections to ruling must be filed within fourteen days after service of same).

**IT IS SO ORDERED.**

**Dated at Hartford, Connecticut this 15th day of January, 2010.**

<u>**/s/ Thomas P. Smith**</u>
**Thomas P. Smith**
**United States Magistrate Judge**